UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT O'BRIEN and
DANIEL UNRUH,

        Plaintiffs,                        Case No. 1:14-cv-598

v.                                       HON. JANET T. NEFF

CITY OF BENTON HARBOR and
TONY SAUNDERS,

        Defendants.

_____/

## OPINION

Plaintiffs Robert O'Brien and Daniel Unruh, former public safety/police department employees of Defendant City of Benton Harbor, Michigan, filed this "reverse discrimination" case against the City and its former emergency manager, Defendant Tony Saunders, asserting violations of federal and state law related to the termination of their employment. The matter is before the Court on Defendants' Motion for Summary Judgment (Dkts 66, 67). Plaintiffs have filed a Response (Dkts 68, 69), and Defendants have filed a Reply (Dkt 70). After full consideration, the Court concludes that oral argument is unnecessary to resolve the Motion. *See* W.D. Mich. LCivR 7.2(d). Defendants' Motion is denied in part (Counts I-III) and granted in part (Count IV).

### I. Stipulated Facts

Pursuant to this Court's dispositive motion procedures, the parties have filed a Joint Statement of Material Facts (JSMF, Dkt 71), which sets forth the following stipulated facts for purposes of the motion.

1.   In 2009, the State of Michigan placed the City of Benton Harbor into Receivership due to its economic condition pursuant to MICH. COMP. LAWS § 141.1549.

2.   Joseph Harris was appointed as the Emergency Manager over Benton Harbor in 2009.

3.   Joseph Harris consolidated the Benton Harbor Fire and Police Departments into a unified Department of Public Safety in 2011.

4.   Roger Lange was appointed Director of the Department of Public Safety in 2011.

5.   Robert O'Brien was appointed Deputy Director of the Department of Public Safety in 2011.

6.   Lange hired Dan Unruh as full-time Captain of the Police Division of the Department of Public Safety in 2012.

7.   Roger Lange is African-American.

8.   Robert O'Brien is Caucasian.

9.   Daniel Unruh is Caucasian.

10. Daniel McGinnis is African-American.

11. Jeremy Connell is Caucasian.

12. Tony Saunders is African-American.

13. Darwin Watson is African-American.

14. Debbie Popp is Caucasian.

15. In February, 2013, Tony Saunders was appointed as the new Emergency Financial Manager over Benton Harbor, replacing Joseph Harris.

16. Tony Saunders had his father, who had been an Assistant Chief of Police for the City of Detroit Police Department, come to Benton Harbor to assess the Department of Public Services ["Safety"?] and make recommendations.

17. Unruh's employment was terminated on May 31, 2013.

18. McGinnis was appointed Deputy Director over the Police Division of the Department of Public Safety on July 22, 2013.

2

19. Jeremy Connell was appointed Deputy Director over the Fire Division of the Department of Public Safety on July 22, 2013.

20. Tony Saunders' term as Emergency Financial Manager over Benton Harbor was completed in March 2014.

## II. Plaintiffs' Lawsuit

In May 2013,[1] Emergency Manager Saunders terminated Plaintiffs' employment with the Benton Harbor Public Safety Department. Plaintiffs allege the terminations were improperly based on their race/color. Both O'Brien and Unruh had longtime careers in law enforcement and both were serving in upper-level administrative positions with the Public Safety Department when Saunders was appointed as the City's Emergency Manager—O'Brien as the Deputy Director and Unruh as the Captain of the Police Division. Plaintiffs contend that Saunders decided to elevate his black fraternity brother and protégé, Captain Dan McGinnis, to police chief, and to accomplish that, Saunders had to eliminate O'Brien and Unruh from their positions because they were the logical successors to the Director of the Department of Public Safety, Roger Lange (Pls. Resp., Dkt 69 at PageID.1271). Plaintiffs allege that Saunders' decision was based on the fact that they were white and McGinnis was black, as evidenced by Saunders' repeated comments that neither O'Brien nor Unruh could become the police chief/director because they were "the wrong color" (*id.*). Further, Saunders declared McGinnis as "untouchable" from lay-offs or disciplinary action that might lead to his termination (*id.*). In fact, following their terminations, Lange, an African-American who was then the Director of Public Safety, reported the discrimination by Saunders to the Michigan

---

[1]Although not a stipulated fact, the record shows that Plaintiff O'Brien's employment was terminated by Saunders on May 2, 2013 (*see* Compl. ¶ 58; Dkt 69-35, Pls. Ex. 34). The Court notes that other than the parties' stipulated facts, the facts stated herein are not intended as a prejudgment of any disputed factual matters with respect to further proceedings in this case.

Department of Treasury, which had authority over Emergency Managers (*id.* at PageID.1271-1272). Saunders subsequently terminated Lange's employment as well after he refused to accept a demotion (*id.* at PageID.1272).[2]

Plaintiffs' Complaint (Dkt 1) alleges four counts: Count I, Violation of Title VII of the Civil Rights Act of 1964; Count II, Violation of the Elliott-Larsen Civil Rights Act; Count III, Violation of 42 U.S.C. § 1983 under the Fourteenth Amendment's Equal Protection Clause; and Count IV, Violation of 42 U.S.C. § 1983's Rights under 42 U.S.C. § 1981. Defendants move for summary judgment of all four counts.

### III. Legal Standards

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013); *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citation omitted).

The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

---

[2]Lange has filed a separate lawsuit against the City, Saunders and McGinnis, *Lange v. City of Benton Harbor*, Case No. 1:14-cv-601 (W.D. Mich. 2014). *See Lange v. City of Benton Harbor*, 111 F. Supp. 3d 785 (W.D. Mich. 2015) (denying the defendants' motion for summary judgment of Lange's retaliation claims under Michigan's Whistleblower Protection Act and Elliott-Larsen Civil Rights Act for his complaints about racial discrimination; and his claims for violations of the Fourth Amendment, except as to the City (appeal pending, Case No. 15-1665 (6th Cir. 2015)).

"There is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Burgess*, 735 F.3d at 471 (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The ultimate inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sierra Brokerage Servs.*, 712 F.3d at 327 (quoting *Anderson,* 477 U.S. at 251-52).

### IV.  Analysis

Defendants move for summary judgment on the grounds that Plaintiffs cannot meet the threshold showing for a *prima facie* case of "reverse discrimination" based on direct evidence or circumstantial evidence (Counts I-III), or for Plaintiffs' contract claims under 42 U.S.C. § 1981 (Count IV), based on the clear evidence before the Court.  Contrary to Defendants' arguments, the Court concludes that genuine issues of material fact exist with respect to the claims in Counts I through III, and Defendants are not entitled summary judgment.  However, the Court grants summary judgment of the contract-based discrimination claims in Count IV.

### A.  Discrimination

Plaintiffs present claims of race discrimination under federal and state law pursuant to Title VII, Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MICH. COMP. LAWS § 37.2202(1)(a), and 42 U.S.C. § 1983 under the Fourteenth Amendment's Equal Protection Clause.  In general, discrimination "'[c]ases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases.'" *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 652-53 (6th Cir. 2012) (quoting *In re Rodriguez*, 487 F.3d 1001, 1007 (6th Cir. 2007)); *see also Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 193 (Mich. 2003).  However, as Defendants

5

point out, the Sixth Circuit Court of Appeals, unlike the Michigan courts, has held that in claims of reverse discrimination under Title VII and §1983 lawsuits, the plaintiff must demonstrate "background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Toth v. City of Toledo*, 480 F. App'x 827, 832 (6th Cir. 2012) (citing *Romans v. Mich. Dep't of Human Servs*., 668 F.3d 826, 837 (6th Cir. 2012)).  Under the ELCRA, no such additional showing is required in reverse discrimination cases.  *Lind v. City of Battle Creek*, 681 N.W.2d 334, 335 (2004).  Accordingly, the heightened burden applies only to Plaintiffs' Title VII and 42 U.S.C. §1983 claims.  In any event, the heightened burden does not affect the disposition, here, because Plaintiffs have made the requisite showing to survive summary judgment under both federal and state law.

To establish a prima facie case of reverse race discrimination with respect to an alleged adverse employment action under federal law, the plaintiff must demonstrate: "(1) background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority; (2) that the plaintiff was qualified for the job; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff was treated differently than similarly situated employees of a different race."[3]  *Toth*, 480 F. App'x at 832 (citing *Romans*, 668 F.3d at 837).

As Defendants further observe, "[i]n order to establish an equal protection violation against a public employer in a section 1983 action, a plaintiff must show that the employer made an adverse employment decision 'with a discriminatory intent and purpose.'"  *Boger v. Wayne Cnty.*, 950 F.2d 316, 324-25 (6th Cir. 1991) (citation omitted).  "When the claim is one of 'reverse discrimination,'

---

[3]These elements may vary to reflect the factual context of the claim, but for purposes of this motion, the Court proceeds with the elements for an adverse employment action in general.  *See Toth*, 480 F. App'x at 834 (setting forth specific elements for a failure-to-promote claim).

that is a claim by a white person that the employer discriminated in favor of a member of a racial minority, 'the presumption that the circumstances which normally make out a prima facie case are indicative of discrimination is not available, absent a showing that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Id.* at 325 (citations and internal quotations omitted).  "The plaintiff may not simply introduce evidence of discriminatory intent and suggest that 'such intent could have played a role in an adverse employment decision.  Rather, a plaintiff is required to demonstrate that the adverse employment decision would not have been made 'but for' her [race].'" *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000) (quoting *Boger*, 950 F.2d at 325) (citation and internal quotations omitted).

"'The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)).  A plaintiff has two alternative ways to establish a reverse discrimination claim:  through direct evidence or through circumstantial evidence.  *Brewer v. New Era, Inc.*, 564 F. App'x 834, 841 (6th Cir. 2014); *Heike v. Guevara*, 519 F. App'x 911, 918-19 (6th Cir. 2013); *Thompson v. City of Lansing*, 410 F. App'x 922, 929 (6th Cir. 2011).  The particular analysis with respect to either type of evidence depends on the plaintiff's theory.  *See Ondricko*, 689 F.3d at 649-52 (discussing whether the plaintiff's race and gender discrimination claims were properly analyzed under a mixed-motive or single-motive analysis).  Here, Plaintiffs argue both the single-motive and mixed-motive theories (Dkt 69 at PageID.1280, 1283, 1284).[4]  Regardless of the

---

[4]The Court addresses the legal theories presented by the parties for purposes of this motion, and such analysis is not intended to be determinative of the particular legal analysis appropriate in this case should the case proceed to trial.

theory and analysis, the outcome of the instant motion is the same—the evidence creates triable issues of fact with respect to Plaintiffs' claims of discrimination based on the termination of their employment.

### 1.  Direct Evidence

"Direct evidence is evidence that, if believed, 'requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Thompson*, 410 F. App'x at 929 (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (citation omitted)); *Sniecinski*, 666 N.W.2d at 192; *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 520 (Mich. 2001).  Direct evidence "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d. 858, 865 (6th Cir. 2003).

Here, Plaintiffs cite record evidence of a number of comments by Saunders referencing Plaintiffs' "color" and stating that neither O'Brien nor Unruh could become the police chief/public safety director because they were the wrong color (Dkt 69 at PageID. 1274-1278).

According to testimony from O'Brien:

- on March 7, 2013, Saunders emailed O'Brien requesting they meet for lunch, during which meeting Saunders asked O'Brien how long he planned to stay employed at Benton Harbor, and when O'Brien responded he would stay for at least ten years, Saunders told him "you can't be police chief because you're white."   In the same conversation, Saunders talked about McGinnis as his "brother."  Saunders indicated that he did not think Chief/Director Lange would be around long, and made it clear that McGinnis would be the next Chief and was "untouchable."  [Pls. Ex. 9; O'Brien Dep., Pls. Ex. 10 at 90-95.]

According to testimony from Unruh:

- at a meeting between Saunders, Lange and Unruh on March 8, 2013 to sign contracts (the day after the O'Brien/Saunders lunch meeting), Saunders noted that Lange would one day want to retire, and that McGinnis was his "boy" and was "untouchable."

8

> Saunders looked at Unruh, and said, "you can't be chief because you're the wrong color … in case you didn't know that" [Unruh Dep., Pls. Ex. 11 at 57-60.]

Additional testimony from Lange, who was the Chief/Director at the time, and from Debbie Popp, the Assistant City Manager, corroborate Plaintiffs' testimony of Saunders' comments. Lange testified that during the March 8, 2013 meeting, Saunders told Unruh that he would never be police chief because "you are the wrong color" and you're not black" and that McGinnis was Saunders' "frat brother," "his bro" and was "untouchable" (Lange Dep., Pls. Ex 2. at PageID.1325-1328). Popp testified that Saunders told her she would never be City Manager because she was the wrong color and the wrong sex and that Unruh and O'Brien would never hold the Public Safety Department Director position because they were the wrong color (Popp Dep., Pls. Ex. 14 at PageID.1515, 1527-1528, 1533-1534) Popp also testified that Saunders told her that in a city that had a 97% black community, O'Brien and Unruh were the wrong color for the Director, and that Saunders complimented O'Brien, and remarked: "But, it was … too bad he was the color he was" (*id.* at PageID.1521, 1527-1528).

Defendants dispute that Saunders made the comments alleged by Plaintiffs, but argue that even assuming he did, the comments are insufficient to rise to the level of direct evidence of discriminatory animus by Saunders. This Court concludes to the contrary. Saunders' comments, viewed in the factual context of this case, are direct evidence of discriminatory intent. A factfinder would not need to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against Plaintiffs because they were white. *See Johnson*, 319 F.3d. at 865.

Defendants' argument that Saunders' comments fail as direct evidence because they are "general, vague or ambiguous" (Dkt 67 at PageID.180) falls far short. The comments testified to

9

are clear, and viewed in favor of Plaintiffs, require no inference to discern a discriminatory intent or motive.  *See Daughtery v Sajar Plastics, Inc.*, 544 F.3d 696, 708 (6th Cir. 2008) (noting that an unambiguous comment must be taken as true at the summary judgment stage and is direct evidence of discriminatory animus).  "[A] corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent."  *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) and *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 379-80 (6th Cir. 1993)).

Defendants additionally point to a portion of Popp's testimony that regarding the comment that she could never be the city manager, Saunders explained that the City Commission would never "have it" (Dkt 67 at PageID.181).  Defendants argue that Saunders' comments must thus be viewed in the context that they were not his own personal beliefs and desires, but instead were merely predictive of outcomes likely after he was no longer the Emergency Manager at Benton Harbor (*id.*).  They further argue that the context renders Saunders' comments ambiguous such that they require the drawing of inferences and cannot serve as direct evidence.  These arguments likewise fall far short of purging Saunders' repeated remarks, in various contexts, of discriminatory animus.

Defendants' remaining arguments, such as that Saunders' reference to McGinnis as his "boy" merely reflects a term commonly used in the African-American community, lend no support to their motion for summary judgment.  At best, these arguments raise issues of fact, in large part dependent on credibility—matters beyond the reach of a summary judgment ruling.  In reviewing a motion for summary judgment, the Court may not weigh the evidence, make credibility determinations, or resolve material factual disputes.  *Lange v. City of Benton Harbor*, 111 F. Supp. 3d 785, 790 (W.D.

10

Mich. 2015) (citing *Alman v. Reed*, 703 F.3d 887, 895 (6th Cir. 2013) and *Anderson,* 477 U.S. at 255).

Moreover, Plaintiffs have provided additional evidence to support their discrimination claims, including Lange's memorandum to the Michigan Treasury Department, detailing Saunders' race discrimination (Pls. Ex. 18), and the terminations of O'Brien and Unruh by Saunders despite Lange's other proposed cost-cutting in his department to save their jobs, which Lange testified were key to his operations.  In his affidavit, Lange avers that as between those three, McGinnis, O'Brien and Unruh, O'Brien and Unruh were more mature, experienced, and dedicated to address the crime plaguing the City (Pls. Ex. 15 ¶ 8).  Defendants' contrary interpretations or explanations of such additional evidence do not undermine Plaintiffs' evidence, but instead merely create disputed issues of fact.

## 2. Circumstantial Evidence

Because the Court is fully persuaded that Plaintiffs have established prima facie cases of discrimination via direct evidence, there is no need to consider the evidence under the *McDonnell Douglas* burden-shifting framework.  However, the Court finds that Plaintiffs prevail on summary judgment under either analysis, and will briefly address the parties' contentions concerning the circumstantial evidence.

In order to survive summary judgment on a claim of race discrimination using circumstantial evidence, a plaintiff must satisfy the burden-shifting analysis under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973).  *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009). The plaintiff must first establish a prima facie case of discrimination; the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for its decision; the burden then shifts back

11

to the plaintiff to show pretext, i.e., that the reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.*; *Reeves*, 530 U.S. at 143.

The courts apply a modified *McDonnell Douglas* framework when a majority plaintiff is involved in a discrimination case: a plaintiff must establish a prima facie case by showing (1) "'background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority'"; (2) that the plaintiff was qualified for the job; (3) he suffered an adverse employment action; and (4) he was treated differently than similarly situated employees of a different race. *Romans*, 668 F.3d at 837. A plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action. *Chen*, 580 F.3d at 400 (footnote omitted).[5]

Defendants argue that Plaintiffs' claims fail under the second and fourth prongs of a prima facie case. Defendants assert that there is no question that O'Brien and Unruh were not cross-trained in firefighting and it was imperative that all members of the Department of Public Safety be cross-trained as police officers and firefighters; thus, O'Brien and Unruh were unqualified for the position of Public Safety Director. However, there is conflicting evidence on this issue, particularly with regard to whether cross-training was mandated for continued employment, and specifically, for upper administrative personnel during the timeframe at issue. Plaintiffs have presented sufficient evidence to withstand summary judgment on this prong.

---

[5]"At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation. If so, her prima facie case is sufficient to support an inference of discrimination at trial. But summary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation." *Chen*, 580 F.3d at 402 n.4 (citations omitted).

Similarly, Plaintiffs have presented sufficient evidence that they were "similarly situated" to McGinnis.  To be "similarly situated," the comparator must be similarly situated to the plaintiff in all relevant aspects.  *Romans*, 668 F.3d at 837-38.  Defendants argue that Plaintiffs were not "similarly situated" to McGinnis because he was cross-trained as a firefighter and police officer.  However, as noted, viewing the evidence in a light most favorable to Plaintiffs, it cannot be said that any cross-training disparity rendered them not similarly situated to McGinnis for purposes of continued employment and/or potential promotion to the Director of Public Safety position.

Finally, Defendants assert that they have shown legitimate and compelling reasons for the decisions to terminate O'Brien and Unruh: Saunders was tasked with downsizing the City budget and had to do so with a reduction in force.  Defendants note that in the time period March through May 2013, thirteen employees lost their jobs with the City—five Caucasians and eight African-Americans (Dkt 67 at PageID.183).  However, as Plaintiffs point out in response, not long after Plaintiffs' terminations, Saunders increased the salaries of two public safety administrators, including that of McGinnis.  Numerous issues of fact exist regarding the amount of the budget cuts necessary and particularly, whether Saunders terminated O'Brien's and Unruh's employment to achieve the budget cuts.  Plaintiffs have produced ample evidence from which a jury could reasonably doubt Defendants' budget-cut explanation for Plaintiffs' terminations.

### 3.  Mixed Motive Theory

"A mixed-motive analysis applies to cases 'where an adverse employment decision was the product of a mixture of legitimate and illegitimate motives.'"  *Ondricko*, 689 F.3d at 649 (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 571 (6th Cir. 2003) (citation omitted)).  Under § 2000e-2(m) of Title VII, a plaintiff can proceed on a mixed-motive claim by demonstrating by

direct evidence or circumstantial evidence, that his protected status was a motivating factor in his termination, even though other factors also motivated his discharge. *Id.* At the summary judgment stage, the ultimate question is whether the plaintiff presented evidence, direct or circumstantial, from which a reasonable jury could logically infer that race was a motivating factor in the decision to terminate the plaintiff's employment. *Id.*

Plaintiffs contend that they have established a prima facie mixed-motive case. The Court agrees based on the evidence. Even if there is evidence that the termination of Plaintiffs' employment was motivated by legitimate, nondiscriminatory reasons as Defendants contend, there is also evidence that discriminatory animus was a motivating factor in the decision to bar their promotion and terminate their employment. This evidence precludes summary judgment.

## B.  Contract Claims under 42 U.S.C. § 1981

Plaintiffs allege that their employment contracts were revised by Saunders in violation of 42 U.S.C. § 1981, which prohibits intentional race discrimination in the formation and execution of contracts. *See Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868-69, opinion supp'd 266 F.3d 407 (6th Cir. 2001). Plaintiffs theorize that Saunders' demand that they sign new employment contracts, giving up substantial benefits, was racially motivated. Plaintiffs assert that McGinnis, by contrast, had no employment contract and thus suffered no loss of benefits. Plaintiffs rely on the fact that the new contracts were presented shortly after the March 2013 meetings in which Saunders made the racial comments at issue.

However, Defendants point out that Plaintiffs were treated no differently than anyone else who had an employment agreement with the City in 2013—all contract employees at the City of Benton Harbor had their employment agreements modified to an "at-will" status (Defs. Reply, Dkt

14

70 at PageID.1644-1645). Defendants argue that Plaintiffs were thus treated exactly the same as African-American employees who had employment agreements, and there is no evidence to support that Saunders' actions in reworking Plaintiffs' employment agreements were in any way based on their status as Caucasians.

The Court is persuaded that Defendants are entitled to summary judgment of Count IV. As with their other claims, Plaintiffs have the burden of establishing a prima facie case of discrimination with respect to this claim. *See Christian*, 252 F.3d at 867-72. Plaintiffs have failed to show that they were treated differently than similarly situated persons outside the protected class. Plaintiffs fail to show how McGinnis was "similarly situated" since he had no employment contract with the City. Thus, Defendants' motion is granted as to Count IV.

## V. Conclusion

On the record presented, the Court concludes that genuine issues of material fact exist with respect to Counts I through III, and therefore, Defendants' Motion for Summary Judgment is properly denied as to those Counts. However, Defendants are granted summary judgment as to Count IV, Plaintiffs' claim under 42 U.S.C. § 1981. An Order will enter consistent with this Opinion.


Dated: March  21 , 2016                     /s/ Janet T. Neff
                                            JANET T. NEFF
                                            United States District Judge