UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT O'BRIEN *et al.*,

    Plaintiffs,

v.

CITY OF BENTON HARBOR *et al.*,

    Defendants.

_____/

Case No. 1:14-cv-598

HON. JANET T. NEFF

## **OPINION**

Following a jury trial and judgment in favor of Plaintiffs in this reverse discrimination case, Plaintiffs have filed a Motion for Attorneys' Fees, Costs and Paralegal Fees under the Elliott-Larsen Civil Rights Act and Title VII (Dkt 144); Motion for Prejudgment Interest on Entire Judgment (Dkt 147); and Proposed Bill of Costs (Dkt 150). Defendants have filed Responses in opposition to the motions (Dkts 152, 153). For the reasons that follow, the Court grants in part and denies in part both motions, and grants the proposed Bill of Costs.

### I. Background

The undersigned has presided over this case since its inception in June 2014. Plaintiffs' Complaint (Dkt 1) alleged four counts: Count I, Violation of Title VII of the Civil Rights Act of 1964; Count II, Violation of the Elliott-Larsen Civil Rights Act (ELCRA); Count III, Violation of 42 U.S.C. § 1983 under the Fourteenth Amendment's Equal Protection Clause; and Count IV, Violation of 42 U.S.C. § 1983's Rights under 42 U.S.C. § 1981. Following discovery, the Court granted Defendants' motion for summary judgment of Count IV (42 U.S.C. § 1981 claim), but denied the motion as to Counts I (Title VII), II (Michigan's ELCRA) and III (§ 1983).

The case was tried before a jury over five days. On June 20, 2016, the jury rendered a verdict in favor of Plaintiffs on two of the three counts presented to them: ELCRA and Title VII, but found no violation of § 1983 (Count III). This Court entered judgment for Plaintiffs in accordance with the jury's award to each Plaintiff: (1) Robert O'Brien, $67,000.00 in lost back wages and $100,000.00 for emotional pain and mental anguish; (2) Daniel Unruh, $32,000.00 in lost back wages and $10,000.00 for emotional pain and mental anguish.

Plaintiffs now move for attorneys' fees, costs and interest pursuant to the fee-shifting provisions of the ELCRA and Title VII, and pursuant to FED. R. CIV. P. 54(d).

## II. Analysis

Title VII provides that "the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee (including expert fees) as part of the costs …." 42 U.S.C. § 2000e-5(k). Likewise, in an action brought under the ELCRA, a court "may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the complainant in the action if the court determines that the award is appropriate." MICH. COMP. LAWS § 37.2802.

Plaintiffs move for attorneys' fees, costs and interest (Dkt 144) as follows: Attorneys' Fees, $200,893.00; Costs (other than taxable), $12,676.50; and Paralegal Costs, $3,815.50. Plaintiffs additionally filed a Bill of Costs (Dkt 150), seeking taxable costs of $2,403.95. Plaintiffs move for an award of prejudgment interest in the amount of $22,528.12 (Dkt 147).

Defendants do not dispute Plaintiffs' general entitlement to reimbursement as prevailing parties, but argue that their request for fees and costs should be significantly reduced. Defendants assert that Plaintiffs declined to settle this case despite settlement offers in excess of the jury award, which resulted in the unnecessary expenditure of resources by Defendants and the Court.

Defendants argue that the Court, in the exercise of its discretion and given its familiarity with the complexity of the case, should make a lodestar reduction of 50 percent to Plaintiffs' appropriate costs and fees from May 19, 2014 forward, which is the date Plaintiffs' counsel began researching legal issues involving the complaint in this case. Defendants oppose an award of prejudgment interest.

The Court considers each component of Plaintiffs' requests in turn.

### A. Attorney Fees

The methodology for determining a reasonable attorney fee award begins with the "lodestar" calculation: the proven number of hours reasonably expended on the litigation multiplied by the court-ascertained reasonable hourly rate. *Jordan v. City of Cleveland*, 464 F.3d 584, 602 (6th Cir. 2006); *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Circ. 2000) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). The court may then adjust the "lodestar" to reflect "relevant considerations peculiar to the subject litigation." *Adcock-Ladd*, 227 F.3d at 349. "The factors which the district court may consider, either in determining the basic lodestar fee and/or adjustments thereto, include the twelve listed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974)." *Adcock-Ladd*, 227 F.3d at 349. These factors, known as the "*Johnson* factors" are:

> "(1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

*Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004) (quoting *Johnson*, 488 F.2d at 717–19). "'The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.'" *Geier*, 372 F.3d at 791 (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir.1999) (citation omitted)).

1. Lodestar

Plaintiffs' counsel seeks attorney fees in the amount of $200,893.00, representing 601.7 hours at rates of $260, $290 and $350 per hour because of hourly rate increases over time (Dkt 145-2 at PageID.3459):

$260.00 x 41.4 — $10,764 beginning May 9, 2013

$290.00 x 99.6 — rate change as of May 20, 2014 — $28,884

$350.00 x 460.7 — rate change as of May 19, 2015 — $161,245

a. Reasonable Hourly Rate

"To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier*, 372 F.3d at 791. Plaintiffs' counsel states that his normal billing rate is $350.00 per hour for employment litigation; however, he has in the past four years used a lower billing rate, which he applied for the applicable time frames. He argues that the hourly rate of $350 is reasonable for the legal market of Western Michigan.

Defendants object to the rate of $350.00 per hour, asserting that counsel's rate was increased by nearly 40 percent[1] during the pendency of this lawsuit, and such an increase in such a short period is not "reasonable." Defendants note that Plaintiffs have provided the affidavit of attorney Bradley Glazier, stating that his rates are between $300.00 and $350.00 an hour. Moreover, the 2014 Economics of Law Practice in Michigan for the Grand Rapids area discloses that hourly billing rates for plaintiffs' employment law have a mean of $287.00 per hour, while at the 75%–95% level it is $328.00 per hour.

This Court has previously found employment discrimination hourly rates of $200 to $400 to be reasonable for prevailing trial counsel in the Western District of Michigan, depending on the nature of the case and counsel's expertise and experience. Plaintiffs' counsel's rates fall within this typical range. However, the request for a sharply escalating fee over the relatively short course of this case is anomalous, and is absent of any reasoned explanation or support. The Court is wary of these unexplained rate increases, which result in the bulk of the hours in this case—approximately 460 of 600—being upcharged by $90 per hour from the initial fee.

Accordingly, the Court determines that an increase to a rate of $300.00 per hour as of May 19, 2015 is reasonable, which still provides a mid-range hourly rate charge for the bulk of the hours counsel expended in this case. The Court finds the $300.00 hourly rate particularly reasonable for Plaintiffs' counsel given the fairly mainstream nature of this litigation and the evidence, and the fact

---

[1] The Court calculates this increase to be closer to 35 percent. Regardless, the dollar amount increase is substantial.

that lead counsel was the sole counsel of record for Plaintiffs and thus performed a full range of work, some of which is typically delegated to associate counsel, and charged at a reduced rate.[2]

### b. Hours Expended

In determining the lodestar, the court should "'exclude excessive, redundant or otherwise unnecessary hours.'" *Jordan*, 464 F.3d at 602 (quoting *Wayne v. Vill. of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994) (citations omitted)). Here, Defendants do not claim, and the Court does not find that Plaintiffs' counsel has billed for excessive, redundant or unnecessary hours. Defendants only object to fees claimed for 41.4 hours prior to May 19, 2014, which Defendants claim are not recoverable as those tasks were pre-litigation in this Court and primarily involved EEOC[3] proceedings. *See Webb v. Bd. of Educ. of Dyer Cty., Tenn.*, 471 U.S. 234 (1985) (cited by Defendants).

In *Webb*, the Court found that the petitioner was not entitled to a fee award for counsel's services during the defendant School Board's hearings. The Court noted that Title VII "authorizes fees for work performed pursuing a state administrative remedy 'to which the complainant was referred pursuant to the provisions of Title VII.'" *Id.* at 240 (quoting *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 71(1980)). However, in *Webb*, the petitioner proceeded under § 1983, which did not include a comparable requirement that a plaintiff exhaust his administrative remedies. *Id.* at 240-41.

---

[2]*See*, e.g., *Waldo*, cited by Plaintiffs for this Court's approval of an hourly rate of $400 for highly experienced lead counsel, but where, unlike in this case, the hours expended included time for associate counsel at $200.00 an hour. *Waldo v. Consumers Energy Co.*, No. 1:06–cv–768, 2012 WL 1085190, at *4 (W.D. Mich. 2012), *aff'd*, 726 F.3d 802 (6th Cir. 2013).

[3]Equal Employment Opportunity Commission

Here, Plaintiffs proceeded under Title VII, and thus *Webb* is inapposite. Defendants have failed to show a proper basis for objecting to fees prior to May 19, 2014. Plaintiffs have provided detailed support for the hours expended (*see* Dkt 145-1, Burhans Aff.; Dkt 145-2, Detailed Billing Statements).

Based on the adjusted hourly rate of $300 after May 19, 2015, the lodestar calculation totals $177,858 as follows:

$260.00 x 41.4 — $10,764 beginning May 9, 2013

$290.00 x 99.6 — rate change as of May 20, 2014 — $28,884

$300.00 x 460.7 — rate change as of May 19, 2015 — $138,210

### 2. *Johnson* Factors

Once the lodestar is calculated, other factors such as those found in *Johnson*, 488 F.2d 714, may be considered. Plaintiffs do not seek an adjustment based on the *Johnson* factors. Defendants do not argue that any particular factors warrant an adjustment, but instead contend that an across-the-board reduction of 50 percent should be made to the lodestar given the complexity of the lawsuit and the results Plaintiffs obtained in light of the settlement offers.

Having considered the factors and the nature of this case relative to employment discrimination litigation generally, the Court determines that a reduction to the lodestar is appropriate to arrive a reasonable fee award in this case. Most significant in this analysis is the modest results obtained, which is appropriately reflected in the Court's assessment of several factors.

Foremost, with respect to *the Amount Involved and the Results Obtained*, Plaintiffs assert that they succeeded on two of their three theories and that the § 1983 claim, which they lost, was essentially redundant of their ELCRA and Title VII claims. However, as Defendants cogently set

out (Dkt 153 at PageID.3568-3571), Plaintiffs failed with respect to their ambitious recovery of damages. Their case yielded only minimal success for the significant investment of time and resources—by the parties and the Court. Plaintiffs rejected Defendants' settlement offers in lieu of counter-demands that far exceeded the jury verdict, and proceeded to trial on what proved to be unrealistic projections of damages. Defendants state that Plaintiffs rejected Defendants' repeated pretrial settlement offers of $300,000 to $500,000 with counter-demands of $900,000 and $1,000,000. Plaintiff O'Brien obtained $167,000.00 while Plaintiff Unruh obtained only $42,000.00.

"'[T]he most critical factor' to a reasonable fee 'is the degree of success obtained.'" *McKelvey v. Sec'y of U.S. Army*, 768 F.3d 491, 495 (6th Cir. 2014) (quoting *Hensley*, 461 U.S. at 436). "Few, if any, reasonable litigants would call a monetary judgment that comes in well under the money offered to settle the case a success. And many courts applying various fee-shifting statutes have measured success in part on this basis." *McKelvey*, 768 F.3d at 495. Here, as Defendants point out, it may be that Plaintiffs' rationale for rejecting the settlement offers was prompted by the opinions of their economic expert, Calvin Hoerneman, whose projections of substantial future damages, front pay and benefits, were based on the flawed assumption that Plaintiffs would have worked at the Benton Harbor Department of Public Safety until they reached approximately 70 years of age, when the evidence established otherwise, i.e., that the tenure of administrative officials at the City of Benton Harbor Department of Public Safety, such as Plaintiffs in this lawsuit, was approximately two years. Regardless, the disparity between the damages sought by Plaintiffs and the damages awarded by the jury reflects a significant disconnect that extended this litigation.

Thus, contrary to Plaintiffs' contention, the *Time and Labor* factor does not weigh in favor of awarding the full lodestar fee calculation. The time and labor required in this case cannot be fully attributed to the "complex" nature of the case as Plaintiffs contend because Plaintiffs' unrealistic damages projections were a significant barrier to settlement. Maintaining unreasonable or unrealistic settlement positions not only consumes significant resources in established pretrial procedures designed to facilitate resolution, but as in this case, unnecessarily consumes significant time and resources post-trial.

Despite the complexities of employment discrimination law, this case was relatively straightforward, not only from a litigation and evidence standpoint, but also in terms of the ultimate damages. Much of the same evidence was at issue in a simultaneously litigated companion case, *Lange v. Benton Harbor*, Case No. 1:14-cv-601, involving the same employees and events, resulting in consolidated discovery. And as Defendants note, the primary evidence on which Plaintiffs relied was straightforward comments Tony Saunders made to Plaintiffs, Roger Lange, and Debra Popp, which Plaintiffs asserted were direct evidence of Saunders' discriminatory motivation.

While a precise measurement of the costs in terms of time and resources is difficult, the Court concludes, that a conservative reduction of 25 percent in the lodestar is appropriate based on the above circumstances, i.e., an award of 75 percent of the calculated fee—$133,393.50. And considering the *Fixed or Contingent Fee* factor, a fee of $133,393.50 is particularly reasonable. Plaintiffs' counsel indicates that this is a contingency fee case. Assuming a contingency fee of one-third, counsel's fee would be $69,667, approximately half of the fee the Court has awarded.

As for the remaining *Johnson* factors, none impact the Court's above determination of a reasonable fee. Defendants do not challenge, and the Court does not doubt, the experience,

reputation and ability of Plaintiffs' counsel. The Court has already addressed various other factors, e.g., the customary fee, and the novelty and difficulty of the questions. "The Supreme Court has repeatedly stated that '[t]he primary concern in an attorney fee case is that the fee award be reasonable.'" *Geier*, 372 F.3d at 792 (quoting *Blum v. Stenson*, 465 U.S. 886, 893 (1984)). Accordingly, applying the above circumstances to the relevant specific factors, the Court awards as a reasonable fee, 75 percent of the lodestar: $133,393.50.

### B. Itemized Costs

Plaintiffs seek costs (other than taxable) of $12,676.50. In support of their request, Plaintiffs attach to their motion brief, counsel's two-page chronological invoice of line item costs charged from August 6, 2013 through June 20, 2016 (Dkt 145-2 at PageID.3460-3461). Plaintiffs fail to provide any summary of the costs by category or amount, and offer no meaningful argument or authority for their request (*see* Dkt 145 at PageID.3439). In turn, Defendants first lodge a general objection to Plaintiffs' costs request stating: "It appears plaintiffs' counsel has attempted to request reimbursement for every single item of cost incurred in this lawsuit, irrespective of whether authorized by statute or court rule, or whether necessary to any outcome reached in this case" (Dkt 153 at PageID. 3564). Such general and superficial argument is unhelpful to the Court in resolving the issue of costs. *See Waldo v. Consumers Energy Co.*, No. 1:06–cv–768, 2012 WL 1085190, at *7 (W.D. Mich. 2012), *aff'd*, 726 F.3d 802 (6th Cir. 2013). Additionally, the parties have left much of the effort necessary to review and calculate or recalculate costs at issue to the Court. Nonetheless, it is clear that Plaintiffs are entitled to costs, and the Court proceeds accordingly.

"The court has discretion to award to the prevailing party those out-of-pocket expenses that would normally be charged to a fee-paying client, including paralegal fees, as long as these are

billed to the client in the ordinary course of business." *Waldo*, 2012 WL 1085190, at *7; *see* 42 U.S.C. § 1988; *Missouri v. Jenkins*, 491 U.S. 274, 288 (1989); *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1023 (N.D. Ohio 1997) (citing *Northcross v. Bd. of Educ.*, 611 F.2d 624, 639 (6th Cir. 1979) (overruled on other grounds)). Defendants raise several limited objections based on the nature or circumstances of the costs requested. The Court briefly addresses these objections.

### 1. Expert Fees

Defendants object to requested costs for Plaintiffs' expert witness fees, contending that there is no statutory provision for shifting of expert witness fees for Plaintiffs' economic expert to Defendants. The Court finds the retention of an expert economic witness necessary in this case. This objection is denied.

### 2. Subpoena on Google

Defendants object to costs of $26.66 (witness fee) and $23.00 (FedEx) associated with a subpoena to Google in 2015, on the ground that Defendants' filed a motion to quash the subpoena, which resulted in Plaintiffs' counsel's withdrawal of the subpoena. Thus, Plaintiffs' request for costs is unreasonable and unwarranted. The Court grants this objection and denies the costs ($49.66).

### 3. Mediation Costs and Fees

Defendants object to mediation costs and fees incurred pursuant to the Court's order that this case be mediated, on the ground that at mediation, Plaintiffs' damages claim was wholly unrealistic and consequently, mediation was unsuccessful. Mediation serves many valuable purposes in addition to the ultimate goal of reaching a resolution of a case. The Court has made an appropriate

reduction in fees associated with Plaintiffs' settlement positions in this case. The Court denies the objection to mediation costs and fees.

### 4. Witness Fees

Defendants object to witness fees for Sheriff Paul Bailey and Brian Shank. Defendants assert that Bailey never testified at trial and there was no basis to have him appear. The Courts disagrees that the witness fee for Sheriff Bailey should be denied on these grounds. This objection is denied.

With regard to Shank, Defendants state that he was called as a rebuttal witness on the third day of trial and when it became apparent that his testimony was not based on personal knowledge, the Court sustained Defendants' objection and struck his testimony. Defendants argue that it would be unreasonable to shift this cost to Defendants. The Court agrees and denies the witness fee as to Shank. Defendants do not identify the specific amount of this cost; the witness fee is invoiced as $127.58 (Dkt 145-2 at PageID.3461). Thus, the Court denies $127.58 in costs.

In sum, the Court denies costs of $177.24 and awards itemized costs of $12,499.26.

### 5. Paralegal Costs

Plaintiffs request paralegal hours as a necessary element of their costs in the presentation of the case, in the amount of $3,815.50. Defendants do not object to these costs, which the Court finds properly awarded. The Court awards paralegal costs of $3,815.50.

### C. Bill of Costs

Plaintiffs have filed a Bill of Costs, seeking taxable costs of $2,403.95. Defendants object to certain costs for printing, for exemplification and making copies, and for the final pretrial conference transcript, on the ground that Plaintiffs have failed to show the costs were necessary. The Court finds this objection without merit. The Court awards taxable costs of $2,403.95.

**D. Prejudgment Interest**

Plaintiffs move for prejudgment interest of $22,528.12 from the date of filing of the Complaint to the date of Judgment, on Plaintiffs' entire proposed judgment amount of $426,385.00, including costs and attorney fees. Plaintiffs request that interest be calculated pursuant to the Michigan statutory prejudgment interest rates, MICH. COMP. LAWS § 600.6103(8). Defendants respond that there is no federal basis for Plaintiffs' request for prejudgment interest, and the request should therefore be denied.

Defendants provide only cursory argument on this issue. Defendants cite *Allison v. City of East Lansing*, No. 5:03-CV-156, 2005 WL 3479841, at *2 (W.D. Mich. Dec. 20, 2005), as authority for Defendants' contention that there is no federal authority for awarding Plaintiffs prejudgment interest. However, in *Allison*, the court denied interest on the ground that the case went to the jury on the single issue of liability under 42 U.S.C. § 1983, and Plaintiffs cited no authority to support their claim for prejudgment interest other than the state statute, MICH. COMP. LAWS § 600.6013. *Allison*, 2005 WL 3479841, at *2. Here, unlike in *Allison*, Plaintiffs advanced, and succeeded on, a state law claim under the ELCRA. Defendants acknowledge that this Court had supplemental jurisdiction over the ELCRA claim. The holding in *Allison* is inapposite, and Defendants' challenge to prejudgment interest is therefore denied.

Michigan law provides for interest on civil money judgments in MICH. COMP. LAWS § 600.6013. Subsection 6013(8) expressly provides: "Interest under this subsection is calculated on the entire amount of the money judgment, including attorney fees and other costs." *See also Grow v. W.A. Thomas Co.*, 601 N.W.2d 426, 438 (Mich. Ct. App. 1999) (rejecting the defendants' challenge to the imposition of prejudgment interest on the award of attorney fees and costs).

Further, as Plaintiffs assert, the Sixth Circuit has observed that prejudgment interest is commonly awarded on back pay awards. *EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836, 842 (6th Cir. 1994). "An award of 'prejudgment interest ... is an element of complete compensation' in a Title VII back pay award.'" *Id.* at 841-42 (quoting *Loeffler v. Frank*, 486 U.S. 549, 558 (1988) (citations omitted)). "Prejudgment interest helps to make victims of discrimination whole and compensates them for the true cost of money damages they incurred." *Id.* at 842. *See also United States v. City of Warren, Mich.*, 138 F.3d 1083, 1096 (6th Cir. 1998) ("The purpose of awarding prejudgment interest under Title VII … is to compensate victims both for the time value of the lost money as well as for the effects of inflation."). Defendants cite no contrary authority.

The Court concludes that Plaintiffs are properly awarded prejudgment interest. However, Plaintiffs calculate interest on a judgment amount of $426,385.00, which is no longer appropriate in light of the Court's reduction in requested attorney fees and costs. Plaintiffs shall recalculate the prejudgment interest to correct for the reduced fees and costs.[4]

### III. Conclusion

Thus, in accordance with the above determinations, Plaintiffs are entitled to attorney fees in the amount of $133,393.50, itemized costs of $12,499.26, paralegal costs of $3,815.50, and taxable costs of $2,403.95. Plaintiffs are also entitled to prejudgment interest as recalculated on the proper judgment amount including fees and costs.

Dated: February 22, 2017    /s/ Janet T. Neff
　　　　　　　　　　　　　　　JANET T. NEFF
　　　　　　　　　　　　　　　United States District Judge

---

[4]According to Plaintiffs' calculations, this amount includes the jury award to Plaintiffs plus attorney fees and costs other than taxable costs.